Good morning, Your Honors. May it please the Court, I represent, I'm Marilee Marshall, I represent Mr. Reyes, and I'm trying to do the impossible task of convincing this Court that the opinion of the State Court was, in this instance, unreasonable under, even within the meaning of the death law. This, this case is so typical. Could you move the microphones closer to each other so they'll be closer to you? Sure, I can talk louder too. Good. This case is so typical of the travesties that preceded the Chu case, where we have a person who had obviously no intent to kill a child, teenager, who was ready to engage in a gang fight with fists, takes off his jacket, and under the natural probable consequence theory, he's convicted not just of murder, first degree murder, and then a special circumstance. When I first took this case, he was doing life without the possibility of parole. Excuse me. Plus, God. You don't have very much time, so I think we know all of this, and so we know he got, he's not on, he's not on LWOP anymore because of, of that, it went back on that. So now we're really talking about the probable consequences and the interplay between the two theory instructions. Yes, Your Honor, but he is still, he still has a special circumstance, which makes him eligible for parole because of the graces of the court and subsequent legislation. But if the circumstance, special circumstance was eliminated by this court, he would be in a totally different position. He would have a second degree murder, maybe, probably he could even, you know. I don't want to get involved in this tangent, but as I see it, there's differences between 20 years to life and 25 to life. 20 years if it's attempted murder, and 25 if it's murder one. So I don't, I just want to be sure that. Well, he has LWOP. He's eligible for parole. He doesn't have LWOP anymore after, well, because of, well, yes. Life without possibility of parole really means life without possibility of parole. That, he doesn't have that anymore. He's eligible for parole at 25, right? Well, yes, but he has the disadvantage of the special circumstance, which he doesn't have to be paroled after 25, even, like he would be otherwise. But perhaps that's not what it's. Okay. One of the, but, all right. So, but people versus Chu doesn't solve, it doesn't prevent a second degree murder conviction, correct? It would not, no. Okay. But he's got a first degree. Yes. All right. And so in this case, so what the state court found was that the special circumstance, which specifically says you have to have the intent to kill to be found guilty or found true of, they said that that tells us that the first degree, that the jury knew that he had to be, that they found the intent to kill. Isn't that what the state court says? That's what they said. And so you have to, under AEDPA, show that's an, that fair-minded jurist could not, you know, that they couldn't disagree on that, right? Yes, I do. Okay. So tell me why, how do you get around that? Well, we look at the jury instructions as a whole and the arguments of counsel, and these were so convoluted, largely because it was tried based upon a natural probable consequence theory and a conspiracy theory also based on the natural probable consequence theory, that the prosecutor kept on using terms like, well, Ms. Serais will step into the shoes of the perpetrator. And when you, so there was never any real clear-cut divergence in the mind of the jury. I mean, if the Court looks at the ECRs, the arguments were long and convoluted. At the time, the law was different, so I'm not saying that it was misconduct to argue natural probable consequences, but it was certainly confusion when you didn't then you take him, and for the special circumstances, you're supposed to sort this out, and all of a sudden give him a separate sort of treatment or a separate appraisal of his mens rea, when in fact he, all through the argument and all through the other instructions, he's instructed that he's in the other guy's shoes. Okay. There was another guy, Monsonaris. Yeah. Monsononaris, or Monsona is an apple. I know. I don't know if I'm saying that. Monsonaris. Okay. He was tried separately, and he's been given different relief. Okay. And they talk about, in Mr. Reyes's case, the Court of Appeal talks about why his case is different than Monsonaris, right, and why the instructions were different, and I would be more troubled if I didn't have their explanation of how this case is distinguishable from Monsonaris, because they were, neither of them were the shooter, right? That's correct. Monsonaris was the person who called in the gun. There's no evidence that my client even heard gun. He took off his jacket. You don't take off your jacket to go to a gun battle. You take off your jacket to engage in a fist fight. Monsonaris is the guy that got on the phone and called Guerrero, who came with the gun. The Court of Appeal's reasoning, they had the same instructions and almost the same prosecutorial argument. Well, not exactly, because they said Monsonaris had a different instruction on the special circumstance where that said that the, it had to be, the shooter had to have the intent to kill, right? It didn't talk about. I don't want to tell the Court this is wrong, but I don't believe that that's accurate. I believe the instruction I looked at, it was exactly the same. The problem is that they each said defendant, and they didn't say which defendant. And in my case, the Court found that harmless, because, but in Monsonaris' case, I think, because he testified, he said, well, when I called for the gun, I thought the guy would just come and, you know, scare the, scare the rival gangsters that they wouldn't use it. And so the jury, the Court felt that, well, perhaps they could have believed that. Well, in Monsonaris, the California Court of Appeals found the jury correctly applied the gang's special circumstance enhancement, because here, unlike in Monsonaris, the jury was instructed to find that the word defendant applies to each defendant. What is your response? There is a pattern instruction that was given, applies to each defendant unless otherwise noted. But it's a pattern instruction, and there were so many instructions, I don't think that instruction was sufficient to have any effect whatsoever. It was on page 3, one line of a multi-page instruction. Exactly. And then you add all the references to defendant plus the prosecutor's summation. Even in the closing, the last arguments of the prosecutor were, you know, this natural probable consequence thing, you know, they step into the shoes of the shooter. You know, you can't, a lawyer person can't sort that out. It's hard for us to sort it out when we look at it. It's very, very confusing. I could save a minute for rebuttal unless the Court has more questions. Okay. We'll let you save it for rebuttal. Thank you. Thank you. Thanks. Good morning. Good morning, Your Honors. Okay. So, Mancinaris did get a different result than this case, and they talk about the Court of Appeal in Reyes does talk about why it's different. Can you tell me how that plays into when we look at AEDPA? Well, I think that, again, in terms of AEDPA, the analysis is what a fair-minded jurist could conclude. And the fact that Mancinaris may have obtained different relief demonstrates that there is potentially a breadth of fair-minded responses to the facts presented in this case. Now, there is the point regarding the CALCRM 1.11, which is the instruction that's given in Reyes's case that says that the term defendant applies to both. And, again, Weeks v. Anglione says that jurors are presumed to understand and apply the instructions given to them. Even though we all know they're totally confusing. But the law does say that it presumes that they follow them. Yes. And California law is in lockstep with Weeks on that point. California courts also make that same presumption. And the question, again, under AEDPA is, you know, even if this court or another court on direct review might conclude that these instructions were confusing or something like that, is it outside the bounds of reason that the state court here could conclude that these jurors would have looked at 1.11, which said the word defendant means both defendants, and then looked at CALCRM 736, which is the instruction on the special cert, which uses the term defendant, applied 1.11 to that instruction and said this instruction is referring to both defendants, not just Guerrero. They were about 70 pages apart, these two instructions. And the summation, both the murder one and the special circumstances required in an intent, and the summation just continued to harp and harp and harp on natural and probable consequences. I read the summation myself, and in places I couldn't tell myself what the prosecutor was referring to as to which theory. And in one place, there was almost a suggestion that they could apply the murder one to the special circumstances at page 155 of the special ER. The prosecutor says, sometimes the law is a little bit redundant. You don't. It sounds like the same. You just say, I've got this feeling I need to make to this count. If it counts guilty, I can make this determination. I mean, it almost suggests you could transfer your verdict from the murder one to the special circumstances. After all, we're talking about the same, and each one requires an intent to kill. And the prosecutor is arguing over and over again natural and probable consequences, probably because the other theory was quite weak, I suspect. And that's why he was constantly arguing about the natural and probable consequences and repeated it over and over again. And it just seems to me that if the special circumstance is really an enhancement that hangs on the validity of the murder one count, the murder one count goes out here. And, therefore, you have the special circumstances in which it seems to me the jury, to say that the verdict on the special circumstances cures the error in terms of the charge on the murder one and the total harping. I must confess, I have the same problem, because the fact the prosecutor repeatedly emphasized the theory of natural and probable causes is problematic because it's invalidifying two, but also it seems to me, and I'd like to know your response, it makes it more likely that the jury impermissibly placed Reyes in the shooter's shoes when deciding if Reyes intentionally killed the victim for the purpose of this gang enhancement. What is your response? Your Honor, my response is, first of all, the jury was never instructed that the natural and probable consequences doctrine applied to the special circumstances. Calcrim 736 makes no reference to the natural and probable consequences doctrine. But you do concede the prosecutor kept mentioning it and mentioning it and mentioning it. I concede that the prosecutor spent a significant portion of his argument arguing the natural and probable consequences doctrine as a theory of liability for murder. Now, in order for us to assume that the jury, even though it was not instructed to apply the natural and probable consequences doctrine to the special CERC, nonetheless, based on the prosecutor's argument, ignored essentially Calcrim 736 and applied a different standard. Well, was there also an instruction that what the prosecutors say isn't evidence? Yes. And the law is what the judge tells you the law is? Yes, Your Honor. Calcrim number 200 was given, which says that to the extent an attorney's argument conflicts with the instructions given, the instructions of the judge control. That's at SER 2. But there was no conflict because the judge was silent. There was no conflict. The suggestion is that the judge didn't say anything about it. He didn't give, for example, there's a California charge that says, however, if you find that a defendant was not the actual killer of a human being or if you're unable to decide whether the defendant was the actual killer, an aider, and a better, you cannot find the special circumstances to be true as that to the defendant unless you're satisfied beyond a reasonable doubt that such defendant with the intent to kill aided and abetted or assisted any other actor during the commission of the murder of the first degree. That's a clear instruction. And I believe it may even be error on the California law not to give it. But that would have, there was no conflict between the charge and the summation because the judge didn't give such an instruction. Respectfully, Your Honor, I disagree with that statement. I think that Calcrim number 736 provides the findings that the jury has to make to find the special circumstance true. Would it have been better to provide that amplifying instruction? Possibly. Certainly. But under 736, if the instruction doesn't tell me as a juror that I can apply the charge, even though I don't have an instruction expressly telling me that I can't do it, its absence from the instruction, I would posit, is contradictory to the interpretation that it seems the bench is taking of the prosecutor's argument. So let me give you, you know, an extreme example. So if the prosecutor said you can consider natural and probable consequences and special circumstances, you would say the judge's charge took care of that? I think that is a tougher case. Yes or no? I think under the existing law, the jurors are presumed to follow the instructions. So if the prosecutor told the juror you could consider, just as I've argued on murder 1, natural and probable consequences, you could consider natural and probable consequences on the special circumstances, you would say that it was because the jury is deemed so to follow the judge's non-instruction. If that happened and there was no objection and the court didn't correct it, I think then the question becomes if that is sufficient to rebut the presumption that the jurors understand and follow the instructions. You are answering my question with a question. You would say then the question becomes. I'm asking you how you answer that question. Let me ask you, under AEDPA and AEDPA, I'm assuming AEDPA applies here. I would have to say that the three jurists were not fair-minded on the court of appeal case. Is that right? Yes. You would have to say that no fair-minded jurist, not the court of appeal, not the California Supreme Court, not the magistrate judge and district court that found that those jurists acted reasonably, that no fair-minded jurist could possibly interpret these instructions and this argument in a permissible fashion. Okay. I do have, this is just, I just kind of want to ask you this question and it's not relevant in a way, but just because Monsonaris went a different way and so he got relief on the first-degree murder. So as a practical matter, if that were to occur, then he's faced with a new trial or did the Monsonaris court just say, did they enter a, did they enter a, say either take second-degree murder or go to trial back on first-degree murder or what happened with him anyway? Your Honor, I don't specifically know the answer to that. I believe under California law, the court of appeal could reduce the charge to second-degree without a new trial in that circumstance. Whether they did or not, I don't know. But what's strange about that, if they do reduce it, he would get the same sentence that he already has. Isn't that true? Under second-degree, I believe so. Second-degree is 15 to life. Or 15 to, yes, Your Honor, 15 to life. I was a state prosecutor, unless they've changed that. But then he still has the 20. He still has the 20. Right, yes. And so, but right now with the first-degree, he's got 25 to life. So he would still have the 20, right? Because the 20 is on the, is that, is the attempted? On the attempted, yeah. Which is concurrent with all of that. So he would be eligible for parole sooner, not in terms of, but I think usually when they reduce it, I think usually that they say either that's it or you go to trial, something like that. Yes. Because the prosecutor could decide to retry him on first again. Yes. Okay. Your Honor, if I may, I know I'm over my time. Well, I know. We asked a lot of questions. Go ahead, because we want to have our questions answered. I don't want to be disrespectful to Judge Corbin. I don't think I answered your question regarding my feeling as to whether that instruction, that extreme example that you provided, that would probably be a problem. Yes, I'm clearly uncomfortable. Don't be afraid of. Don't be afraid of. That's not this case, but, yes, that would be a problem. All right, thank you. Thank you, Your Honor. I would just say that I know that the vernacular that's used is fair-minded. Can you articulate a little more and slow down? It's not really a question of fair-minded so much as it's unreasonable. It's outside the bounds of reason that a court could find that a jury was not confused by these instructions and these arguments put together. This, the jury. Well, but EPA doesn't let us decide it in the first instance. I realize that, Your Honor. What I'm saying is that no reasonable jurist and no reasonable jurist, either in the first instance or the second instance, the jury could not possibly reasonably have applied these instructions in a reasonable manner, and no reasonable jurist could have found that they did. The jury needed to be instructed that the natural probable consequence theory did not apply. Except a number of jurists disagree with you, so I would have to find that they're not fair-minded jurists. Yes, or unreasonable. Which I would have to find the district court, I'd have to find the three court of appeal justices, plus I'd have to find the California Supreme Court, right? Well. I mean, it's not something that couldn't happen, but that's what the standard means. I wouldn't say the California Supreme Court, because that's discretionary review. They don't take every case. The fact that they took it, didn't take it, doesn't mean that they necessarily. Could I ask you, what is the we're dealing with a question of harmless error, and I think the Supreme Court cases are confused, but I think in our most, the Ninth Circuit's most recent case, they said that the Brecht versus Abraham standard for habeas in fact supersedes, because it's even a greater standard than AEDPA, so we're not dealing so much with the AEDPA standard, but with the Supreme Court's view, which comes down to whether we would have a grave doubt as to whether the error was harmless. I think that Brecht was in existence before AEDPA, and I have never had a problem with Brecht in any of the cases that I saw fit to bring before this Court. The State court applied Chapman on direct appeal. He had three appeals. They applied Chapman, and I think their application of Chapman as to whether the error was prejudicial was patently unreasonable. I think we clearly have Brecht error. Thank you. All right. Thank you both for your argument. This matter will stand submitted.
judges: D.W. Nelson, Callahan, Korman